IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS on behalf of itself, its patients, physicians, and staff; REPRODUCTIVE HEALTH SERVICES OF PLANNED PARENTHOOD OF THE SAINT LOUIS REGION on behalf of itself, its patients, physicians, and staff; RONALD N. YEOMANS, M.D., on his own behalf and on behalf of his patients,<br><br>                Plaintiffs,<br><br>v.<br><br>PETER LYSKOWSKI, in his official capacity as Director of the Missouri Department of Health and Senior Services; CHRIS KOSTER, in his official capacity as Attorney General of the State of Missouri; DANIEL KNIGHT, in his official capacity as Boone County Prosecutor; JEAN PETERS BAKER, in her official capacity as Jackson County Prosecutor; DEAN DANKELSON, in his official capacity as Jasper County Prosecutor; DAN PATTERSON, in his official capacity as Greene County Prosecutor,<br><br>                Defendants. | Case No. 2:16-CV-4313 |

## COMPLAINT

Plaintiffs, by their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following:

**I. PRELIMINARY STATEMENT**

1. This action for declaratory and injunctive relief is brought under the U.S. Constitution and 42 U.S.C. § 1983, to challenge Missouri restrictions that unconstitutionally

burden access to abortion in the state. First, Plaintiffs challenge a Missouri statute, Mo. Ann. Stat. § 197.200, that requires health centers that provide abortions to be licensed as ambulatory surgical centers ("ASC Restriction"). Second, Plaintiffs challenge several separate requirements that physicians who provide abortions must have various forms of hospital admitting privileges and/or a written transfer agreement with a nearby hospital, codified at Mo. Ann. Stat. § 197.215, Mo. Code Regs. Ann. tit. 19, § 30-30.060, Mo. Ann. Stat. § 188.080, and Mo. Ann. Stat. § 188.027(1)(1)(e) (collectively the "Hospital Relationship Restriction"). Both the ASC Restriction and the Hospital Relationship Restriction (together, "the Restrictions") closely resemble Texas restrictions recently invalidated by the U.S. Supreme Court in *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292 (2016), *as revised* (June 27, 2016), and like the ASC and admitting privileges restrictions at issue in that case, they impose medically unnecessary requirements on health centers and physicians that provide abortions and unconstitutionally burden access to abortion in Missouri.

2. The Restrictions severely restrict access to abortion in Missouri, which currently has only one licensed abortion facility in the entire state, located in St. Louis, to serve the nearly 1.2 million Missouri women of reproductive age. Plaintiffs have four additional health centers that are prevented from providing abortion by the Restrictions, despite being able to safely do so.[1] Women from all corners of Missouri, therefore, must currently travel up to 370 miles to obtain an in-state abortion.

3. More specifically, Plaintiff Reproductive Health Services of Planned Parenthood of the Saint Louis Region ("RHS") and its physicians would provide abortions at health centers located in Joplin and Springfield, Missouri, which currently offer family planning services, but

---

[1] *State Facts About Abortion: Missouri*, Guttmacher Institute, https://www.guttmacher.org/fact-sheet/state-facts-about-abortion-missouri.

2

cannot because of the Restrictions. Plaintiff Comprehensive Health of Planned Parenthood Great Plains ("Comprehensive Health") and its physicians would provide abortions at health centers located in Kansas City and Columbia, Missouri, which currently offer family planning services, but they cannot because of the Restrictions. Further, as detailed below, the Department of Health and Senior Services ("DHSS") has a history of shifting its interpretation of the ASC Restriction as applied to the Columbia and Kansas City health centers in a way that creates a significant impediment to these health centers complying with that restriction.

4. The Restrictions irreparably injure Missouri women seeking abortion by threatening their health, imposing medically unnecessary burdens on their constitutionally protected right to obtain a pre-viability abortion, and in some cases depriving them of that right altogether. The Restrictions also injure Plaintiffs by preventing them from pursuing their businesses and professions and frustrating their missions to provide comprehensive reproductive health care to Missouri women.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district and because Defendants Lyskowski and Koster, in their official capacities, reside in the Central Division of the Western District of Missouri.

## III. PARTIES

### A. Plaintiffs

8. Comprehensive Health is a not-for-profit corporation organized under the laws of Kansas and registered to do business in Missouri. Comprehensive Health provides abortions at two health centers in Kansas and one health center in Oklahoma, and wishes to provide abortion services at Planned Parenthood's health centers in Columbia and Kansas City, Missouri, as it did in the past until it was prevented by the ASC and Hospital Relationship Restrictions. These health centers currently provide general reproductive health care, including family planning services, testing and treatment for sexually transmitted infections, cervical and breast cancer screening services, pregnancy testing, and all-options counseling. Plaintiff Comprehensive Health sues on behalf of itself, its patients, physicians, and staff.

9. RHS is a not-for-profit corporation organized under the laws of Missouri. RHS operates a licensed abortion facility ASC in St. Louis and also provides medication abortions at a health center in Fairview Heights, Illinois. RHS wishes to offer abortion services at Planned Parenthood health centers in Joplin and Springfield, Missouri. These health centers currently provide general reproductive health care, including family planning services, testing and treatment for sexually transmitted infections, cervical and breast cancer screening services, pregnancy testing, and all-options counseling. Plaintiff RHS sues on behalf of itself, its patients, physicians, and staff.

10. Plaintiff Ronald N. Yeomans is a board-certified physician specializing in obstetrics and gynecology with over 40 years experience. He provides abortions at Comprehensive Health's health centers in Overland Park, Kansas and Wichita, Kansas, and

4

wishes to provide abortions at Planned Parenthood health centers in Missouri. Plaintiff Yeomans sues on his own behalf and on behalf of his patients.

**B. Defendants**

11. Defendant Peter Lyskowski is the Director of DHSS, the agency responsible for abortion facility licensure, Mo. Ann. Stat. §§ 197.205, 197.215, as well as for adopting the reasonable rules, regulations, and standards necessary to implement Missouri's Ambulatory Surgical Center Licensing Law ("ASCLL"), including the Hospital Relationship Restriction, Mo. Ann. Stat. § 197.225. Director Lyskowski is sued in his official capacity, as are his employees, agents and successors.

12. Defendant Chris Koster is the Attorney General of the State of Missouri. As Attorney General, Defendant Koster is charged with enforcing Missouri's ASCLL, and has specific authority to seek injunctive and other relief for violations thereof. Mo. Ann. Stat. § 197.235. Defendant Koster is sued in his official capacity, as are his employees, agents and successors.

13. Defendant Daniel Knight is the Prosecuting Attorney for Boone County, Missouri, where the Columbia health center is located. He is authorized to prosecute violations of the Missouri criminal law, including violations of the ASCLL and the state's criminal prohibition on physicians providing abortions without hospital admitting privileges. Defendant Knight is sued in his official capacity, as are his employees, agents and successors.

14. Defendant Jean Peters Baker is the Prosecuting Attorney for Jackson County, Missouri, where the Kansas City health center is located. She is authorized to prosecute violations of the Missouri criminal law, including violations of ASCLL and the state's criminal

5

prohibition on physicians providing abortions without hospital admitting privileges. Defendant Baker is sued in her official capacity, as are her employees, agents and successors.

15. Defendant Dean Dankelson is the Prosecuting Attorney for Jasper County, Missouri, where the Joplin health center is located. He is authorized to prosecute violations of the Missouri criminal law, including violations of ASCLL and the state's criminal prohibition on physicians providing abortions without hospital admitting privileges. Defendant Dankelson is sued in his official capacity, as are his employees, agents and successors.

16. Defendant Dan Patterson is the Prosecuting Attorney for Greene County, Missouri, where the Springfield health center is located. He is authorized to prosecute violations of the Missouri criminal law, including violations of ASCLL and the state's criminal prohibition on physicians providing abortions without hospital admitting privileges. Defendant Patterson is sued in his official capacity, as are his employees, agents and successors.

## IV. FACTUAL ALLEGATIONS

### A. Abortion Background

17. Legal abortion is one of the safest procedures in contemporary medical practice. Abortion complications are exceedingly rare: nationwide, less than 0.3% of abortion patients experience a complication that requires hospital treatment.

18. There are two types of abortion, surgical abortion and medication abortion. In a surgical abortion, instruments are used to remove the products of conception from the uterus. However, surgical abortion is not what is commonly understood as a surgical procedure, as it involves no incision and no general anesthesia. In medication abortion, patients are given medications that cause the woman to expel the products of conception, similar to a miscarriage.

6

Plaintiff RHS currently offers both surgical and medication abortion at its health center in St. Louis.

19. Women seek abortions for a variety of reasons, including familial, medical, financial, and personal. Among other reasons, some women have abortions because they do not want to start or add to their family at that time, some to preserve their life or their health, and some because they have become pregnant as a result of rape. Some women who seek abortions do so because the fetus has been diagnosed with a medical condition or anomaly. Approximately one in three women in this country will have an abortion by age 45. Most women having abortions (61%) already have at least one child, and 66% plan to have children in the future.

### B. ASC Restriction

20. Missouri's ASCLL, Mo. Ann. Stat. § 197.200, requires that any facility "operated for the purpose of performing . . . any second . . . trimester abortions or five or more first-trimester abortions per month" be licensed as an ASC. Mo. Ann. Stat. § 197.200(1). The ASCLL also requires that, in general, a medical facility must be licensed as an ASC when the facility is "operated primarily for the purpose of performing surgical procedures or… performing childbirths." *Id.*; Mo. Code. Regs. Ann. tit. 19 § 30-30.010(1)(b). Regulations implementing the ASCLL define "primarily for the purpose of" to mean that at least 51% of the patients treated or 51% of the revenues received were for a surgical procedure. Mo. Code. Regs. Ann. tit. 19 § 30-30.010(1)(b)(1). The ASCLL, therefore, singles out abortion as the only medical service for which the licensing requirement is triggered at five or more procedures per month (or one procedure if it is a second trimester abortion).

21. Operation of an ASC without a license is a Class A misdemeanor. Mo. Ann. Stat. § 197.235.

22. The regulatory scheme in effect to implement the ASCLL has specific regulations for abortion facility ASCs that establish, inter alia, detailed physical facility requirements, including procedure rooms with dimensions of at least twelve feet by twelve feet and a minimum ceiling height of nine feet, patient corridors at least 6 feet wide, door widths at least 44" wide, and similarly specific requirements regarding facilities' HVAC systems and finishes for ceilings, walls, and floors, among others. *See* Mo. Code. Regs. Ann. tit. 19 § 30-30.070. While these requirements were developed for newly constructed or significantly renovated facilities, DHSS has taken the position that they apply to any health center seeking licensure to provide abortions. *See Planned Parenthood of Kansas v. Drummond*, No. 07-4164-CV-C-ODS, 2007 WL 2811407, at *2 (W.D. Mo. Sept. 24, 2007).

23. The four health centers at which Plaintiffs wish to provide abortions do not meet these physical facility requirements. For example, none have the specified corridor width, doorway width, or ceiling height requirements.

24. As the U.S. Supreme Court held in *Whole Women's Health*, when it rejected Texas's ASC restriction, requiring abortion facilities to meet these physical requirements "does not benefit patients and is not necessary" because such requirements are inappropriate in the context of abortion. 136 S.Ct. at 2315.

25. Surgical abortions can be safely performed in office-based settings, such as doctors' office and specialized clinics, and this is accepted medical practice nationally. There is no medical basis for requiring abortions to be performed in facilities that meet ASC requirements. For example, the ASC requirements for the size of procedure rooms and recovery rooms, and the widths of corridors and doorways are unnecessary for the safe provision of abortion care, which involves only a small number of medical personnel and a small amount of

8

equipment, and does not involve the use of deep sedation or general anesthesia. The excess space mandated by Missouri does not provide a health benefit to patients. In addition, some of Missouri's requirements, such as those related to scrub facilities, are geared toward maintaining a sterile operating environment such as would be appropriate for a procedure involving an incision into a sterile bodily cavity. But surgical abortion is not a sterile procedure, because the provider accesses the patient's uterus through the vagina, which is naturally colonized by bacteria. Thus, physical facility requirements aimed at maintaining a sterile field are unnecessary and provide no medical benefit.

26. Many procedures commonly performed in office-based settings are comparable to or riskier than surgical abortion, including gynecological procedures such as diagnostic dilation and curettage, hysteroscopy, surgical completion of miscarriage, colposcopy with cervical biopsy, and loop electrosurgical excision of the cervix. Other non-gynecological procedures such as colonoscopy, many forms of plastic surgery, and dermatologic cancer surgery are comparable to or riskier than abortion. Indeed, some of these procedures are performed under general anesthesia, which, by itself, is much riskier than abortion. But, Missouri law does not require that facilities in which these procedures are performed be licensed as ASCs unless they are operated primarily for the purpose of performing surgical procedures.

27. The ASC Restriction is particularly inappropriate in the context of medication abortion, which involves patients simply swallowing a pill in the health center. Patients then take a second medication 24–48 hours later at a location of their choosing, most often at home, which causes the expulsion of the contents of the uterus in a process similar to a miscarriage. Complications from medication abortion are extremely rare and only arise after a woman has

9

gone home. There is no medical justification whatsoever for onerous physical facility requirements for medication abortion.

28. Indeed, DHSS has recognized that a health center can safely provide both surgical and medication abortion services without complying with these physical facility requirements. As a result of a prior lawsuit, *Planned Parenthood of Kansas and Mid-Missouri v. Drummond*, No. 07-4164-CV-C-ODS (W.D. Mo. 2007), DHSS entered into a settlement agreement allowing the Columbia health center to be licensed by complying with a lesser (though still onerous and medically unnecessary) set of physical facility requirements, for example approving smaller corridor widths, lower ceiling heights, and smaller procedure room and counseling room areas than those required by the ASCLL and its implementing regulations. As to the Kansas City health center, because it would offer only medication abortion and no surgical abortion or other form of surgery, DHSS agreed that it did not need to comply with the physical facility requirements at all and additionally read out certain other inapplicable requirements.

29. However, DHSS has repeatedly changed its position on what it will require under the settlement agreement, and these shifting interpretations of the ASCLL's medically irrelevant requirements makes them a continuing impediment to abortion access in the state. For example, DHSS has recently informed Comprehensive Health that policies DHSS has approved in the past for the Columbia and Kansas City health centers are no longer sufficient, a bathroom exhaust system in the Columbia facility that has been approved in the past is no longer sufficient, and that the previously approved number of recliners in the recovery area is no longer sufficient.

30. The Joplin and Springfield health centers are not parties to this settlement agreement, because they were not providing abortions at the time of the prior litigation. Thus, absent injunctive relief from this Court, they are subject to the full obligations of the physical

facility and other requirements, which they, like the Columbia and Kansas City health centers, are unable to meet.

### C. Hospital Relationship Restriction

31.     Missouri law contains several overlapping hospital relationship requirements. One of the ASCLL's statutory licensing requirements for ASCs requires that surgical procedures may be performed "only by physicians . . . who at the time are privileged to perform surgical procedures in at least one licensed hospital in the community in which the ambulatory surgical center is located" or there must be a "current working agreement with at least one licensed hospital in the community in which the ambulatory surgical center is located, guaranteeing the transfer and admittance of patients for emergency treatment." Mo. Ann. Stat. § 197.215(2). The regulatory scheme for abortion facility ASCs similarly requires that "physicians performing abortions at [an abortion facility] have staff privileges at a hospital within fifteen (15) minutes' travel time from the facility or the facility shall show proof there is a working arrangement between the facility and a hospital within fifteen (15) minutes' travel time from the facility granting the admittance of patients for emergency treatment whenever necessary." Mo. Code Regs. Ann. tit 19, § 30-30.060(1)(C)4.

32.     In addition, Missouri law makes it a crime for a physician to provide an abortion without "clinical privileges at a hospital which offers obstetrical or gynecological care located within thirty miles of the location at which the abortion is performed." Mo. Ann. Stat. § 188.080. Violation of this statute is a class A misdemeanor. The existence of this criminal statute makes it practically impossible for abortion facilities to utilize the ASCLL's option of having a transfer agreement with a local hospital because, even if they are able to obtain such an agreement, the

11

facility's physicians still would be unable to provide abortions unless they had local hospital privileges.[2]

33. As with the ASC Restriction, Missouri does not require facilities that perform procedures other than abortion that are of comparable or higher risk to meet the Hospital Relationship Restriction unless the facility is operated primarily for the purpose of performing surgical procedures.

34. Plaintiffs are unable to meet the Hospital Relationship Restriction for the Kansas City, Columbia, Joplin and Springfield health centers. Even though Comprehensive Health and RHS's physicians who wish to provide abortion at these health centers hold hospital privileges, they are unable to obtain hospital privileges within 15 minutes travel time from the facilities. Some hospitals, for political, ideological, or religious reasons, may be unwilling to grant admitting privileges to physicians whose practice includes providing abortion services, or hospitals may refuse to grant, or even revoke, privileges as a result of anti-abortion political pressure. For example, one of Comprehensive Health's physicians had held privileges near the Columbia health center, but those privileges were revoked in late 2015 as a result of pressure from the Missouri Senate Interim Committee on the Sanctity of Life. *See Planned Parenthood of Kansas v. Lyskowski*, No. 2:15-CV-04273-NKL, 2016 WL 2745873, at *2 (W.D. Mo. May 11, 2016).

35. In addition, even if hospitals were willing to work with Comprehensive Health and RHS's physicians, the physicians are unable to meet hospitals' requirements for privileges because of the nature of their practices. Because abortion is extremely safe, and the need for

---

[2] In addition, Missouri's informed consent for abortion law requires that patients be provided in writing prior to the abortion information about the hospital "at which the physician performing or inducing the abortion has clinical privileges." Mo. Ann. Stat. § 188.027(1)(1)(e). Violation of this requirement is a class A misdemeanor. Mo. Ann. Stat. § 188.075.

hospitalization is extremely rare, physicians who provide abortion do not admit patients to the hospital on a regular basis and so cannot meet hospitals' requirements for proctoring or evaluation of their practice in the hospital setting. Many hospitals also require physicians to name a backup physician who already has privileges at the hospital and agrees to provide coverage, but this requirement is impossible to meet because physicians are not willing to risk harassment or harm to their own practices from associating with a physician who provides abortion. In addition, Comprehensive Health's and RHS's physicians do not reside near the Columbia, Joplin or Springfield health centers and therefore cannot meet hospitals' requirements that privileged physicians reside within the hospital's geographic service area or requirements that physicians take emergency department call.

36. Similarly, Comprehensive Health and RHS have been unable to obtain written transfer agreements with any hospitals near the Kansas City, Joplin and Springfield health centers, despite diligent efforts to request such an agreement from each and every hospital within the communities of these health centers. Many of the eligible hospitals have either refused to respond, or responded that no written transfer agreement is necessary, as they will treat any patients who need care in an emergency.

37. The Hospital Relationship Restriction is medically unnecessary in the context of abortion and does not provide a benefit to patients; on the contrary, it harms patients by restricting access to abortion services in Missouri. As the U.S. Supreme Court found in *Whole Women's Health*, because abortion is "extremely safe," there is a "virtual absence of any health benefit" to requiring physicians who provide abortions to have hospital admitting privileges. 136 S.Ct. at 2311, 2313.

13

Case 2:16-cv-04313-NKL   Document 1   Filed 11/30/16   Page 13 of 19

38. Even though abortion is extremely safe, Plaintiffs are prepared to provide high quality care in the rare event of complications. In fact, most complications related to abortion are safely and appropriately managed in the clinic setting. In the exceedingly rare case that a patient requires hospital-based care, Plaintiffs' protocols and practices ensure that the patient receives the necessary care, consistent with the standard of practice.

39. Complications from abortion are not only rare, but the few complications that do occur may not present until after a patient has left the health center. Plaintiffs provide their patients upon discharge with phone numbers to call if they experience complications or have concerns at any time, day or night, after they have left the health center. In nearly all cases, the patients' concerns or complications can be addressed over the phone by a qualified health care professional, or through a return visit to the clinic. In the rare instances where additional or after hours care is required, Plaintiffs' staff will refer the patient to a local emergency room, as is also consistent with the standard of care.

40. In the exceedingly rare event that a patient needs to be transferred via ambulance from one of Plaintiffs' health centers to a hospital, Plaintiffs' policies and procedures ensure that patients receive appropriate care. Consistent with the recognized standard of care and to ensure continuity of care, Plaintiffs' physicians will communicate with the emergency room physician and/or the on-call ob-gyn at the hospital where the patient is received, and those hospital physicians will involve other physicians at the hospital as is necessary and appropriate.

41. Regardless of whether a physician has local hospital privileges or whether a facility has a written transfer agreement with a hospital, appropriate care is ensured because hospitals provide necessary care to patients who need it. Indeed, hospitals must comply with the federal Emergency Medical Treatment & Labor Act, which requires hospitals to treat and

stabilize all emergency patients. 42 U.S.C. § 1395dd(b) (commonly referred to as EMTALA). In fact, each of the two hospitals near the Joplin health center and each of the two hospitals near the Springfield health center have declined to enter into a transfer agreement with these health centers because such an agreement is unnecessary, as they would treat any patients who needed care in an emergency.

42. Even if a physician had local hospital privileges or a facility had a transfer agreement at a particular hospital, the facility's patients may not go to that hospital. Patients experiencing complications at home should seek treatment at their nearest hospital emergency department. In addition, if a patient is transported by ambulance either from a health center or from home, paramedics may decide which hospital is closest or best suited for the patient's needs regardless of which hospital the facility has a relationship with. Paramedics may also follow the patient's preference based on her insurance or other concerns.

43. The Hospital Relationship Restriction, therefore, does not increase patient safety and is medically unnecessary.

### D. The Impact of the Restrictions

44. Plaintiffs and their patients are suffering ongoing irreparable injury as a result of the ASC and Hospital Relationship Restrictions.

45. The Restrictions harm women's health by restricting access to abortion to only one abortion facility in the state of Missouri, in St. Louis. Women from all corners of Missouri must currently travel to this facility to obtain an abortion in their home state.

46. In some cases, women are unable to obtain abortions at all because of the lack of access and the difficulty and expense of traveling a long distance to a provider. For other women, the travel required increases the cost and logistical difficulty of reaching a provider and therefore

15

Case 2:16-cv-04313-NKL   Document 1   Filed 11/30/16   Page 15 of 19

delays the abortion, as well as causing the woman to miss additional work, childcare, and other obligations; incur additional expenses; and, in some cases, jeopardize the confidentiality of her pregnancy and/or abortion decision. Although abortion is one of the safest procedures in contemporary medicine, the risk of complications (as well as the cost of the procedure) increases as the pregnancy advances.

47. The Restrictions therefore, irreparably harm Plaintiffs' patients in two ways: threatening the health of women seeking abortions, and depriving women of their constitutionally protected right to obtain a pre-viability abortion.

48. The Restrictions also harm Plaintiffs by preventing them from pursuing their businesses and professions, frustrating their missions to provide comprehensive reproductive health care to Missouri women, and by depriving them of revenue they would otherwise be earning from providing abortion services.

49. Plaintiffs and their patients have no adequate remedy at law.

## CLAIMS FOR RELIEF

### COUNT I
### (Substantive Due Process – Right to Privacy – ASC Restriction)

50. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 49 above.

51. Missouri's ASC Restriction violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution. It is an unnecessary health regulation that imposes an undue burden on women's right to choose abortion.

## COUNT II
### (Substantive Due Process – Right to Privacy – Hospital Relationship Restriction)

52. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 49 above.

53. Missouri's Hospital Relationship Restriction violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution. It is an unnecessary health regulation that imposes an undue burden on women's right to choose abortion.

## COUNT III
### (Equal Protection – ASC Restriction)

54. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 49 above.

55. Missouri's ASC Restriction violates Plaintiffs' and their patients' rights under the Equal Protection Clause to the U.S. Constitution by treating Plaintiffs and their patients differently from other similarly situated health care providers and patients without a sufficient state interest.

## COUNT IV
### (Equal Protection – Hospital Relationship Restriction)

56. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 49 above.

57. Missouri's Hospital Relationship Restriction violates Plaintiffs' and their patients' rights under the Equal Protection Clause to the U.S. Constitution by treating Plaintiffs and their patients differently from other similarly situated health care providers and patients without a sufficient state interest.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court:

58. Issue a declaratory judgment that Missouri's Ambulatory Surgical Center Licensing Law, Mo. Ann. Stat. § 197.200, and its implementing regulations, Mo. Code Regs. Ann. tit. 19, §§ 30-30.010, 050-070 is unconstitutional as applied to facilities that provide abortion;

59. Issue a declaratory judgment that Missouri's Hospital Relationship Restriction, codified at Mo. Ann. Stat. § 197.215, Mo. Code Regs. Ann. tit. 19, § 30-30.060, Mo. Ann. Stat. § 188.080, and Mo. Ann. Stat. § 188.027(1)(1)(e), is unconstitutional;

60. Issue injunctive relief, without bond, preventing Defendants, their employees, agents, and successors in office from enforcing Missouri's Ambulatory Surgical Center Licensing Law, Mo. Ann. Stat. § 197.200 Mo. Code Regs. Ann. tit. 19, §§ 30-30.010, 050-070, and Missouri's Hospital Relationship Restriction, codified at Mo. Ann. Stat. § 197.215, Mo. Code Regs. Ann. tit. 19, § 30-30.060, Mo. Ann. Stat. § 188.080, and Mo. Ann. Stat. § 188.027(1)(1)(e) against facilities and physicians that provide abortion.

61. Grant Plaintiffs' attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and/or

62. Grant such further relief as this Court deems just and proper.

Respectfully submitted,

ARTHUR BENSON & ASSOCIATES

*s/ Jamie Kathryn Lansford*
Arthur A. Benson II, Mo. Bar No. 21107
Jamie Kathryn Lansford Mo. Bar No. 31133
Arthur Benson & Associates

4006 Central Avenue
Kansas City, Missouri 64111
(816) 531-6565
(816) 531-6688 (telefacsimile)
abenson@bensonlaw.com

and

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.
Melissa A. Cohen (*pro hac vice forthcoming*)
Jennifer Sandman (*pro hac vice forthcoming*)
Planned Parenthood Federation of America, Inc.
123 William Street
New York, New York 10038
(212) 541-4649
(212) 247-6811 (telefacsimile)
melissa.cohen@ppfa.org
jennifer.sandman@ppfa.org

19