IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, et al. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:16-04313-CV-C-HFS ) |
| DR. RANDALL WILLIAMS, in his official capacity as Director of the Missouri Department of Health and Senior Services, et al. | ) ) ) ) |
| Defendants. | ) ) |

## AMENDED MEMORANDUM AND ORDER[*]

This litigation seeking injunctive relief has been brought by Kansas City and St. Louis organizations commonly referred to as "Planned Parenthood" entities, and by a doctor (Yeomans) seeking abortion authority. Plaintiffs seek to be relieved from Missouri statutory and regulatory restrictions on abortion facilities as purported Ambulatory Surgical Centers (ASCs) and requiring nearby hospital affiliation for doctors performing abortions. Essentially plaintiffs ask me to apply to Missouri last June's ruling by the Supreme Court in a Texas case. Whole Woman's Health v. Hellerstedt, 136 S.Ct. 2292 (2016) (Hellerstedt).

Suit is pending against State defendants, the new Attorney General, Joshua D. Hawley, and Dr. Randall Williams, the new Director of the Missouri Department of Health and Senior Services (HSS). Also defendants (Local Defendants) are the Prosecuting Attorneys of Boone, Jackson, Greene and Jasper Counties, where abortion services (medicinal and physically

---

[*] The caption of the case is revised to reflect substitution of parties. Doc. 67.

performed procedures) are in question. The Local Defendants have taken differing positions and are not involved in the current motion to dismiss filed by the State Defendants. Doc. 26.

Defendants' briefing argues that (1) the claims are not "ripe" for adjudication because there has allegedly been no application for clinician privileges at pertinent hospitals, and there has been no application to HSS for a waiver or deviation from any particular ASC requirements (under authority of 19 CSR 30-30.070(1)), (2) the Kansas City organization is subject to a 2010 Settlement Agreement pertaining to a Columbia, Mo. facility, and (3) there are allegedly uncorrected deficiencies for existing facilities that would prevent abortion use regardless of the validity of the challenged laws. Doc. 27.

Some of the defendants' points relate to the ultimate merits and to possible limitations on equitable relief. The primary issue that relates to jurisdictional ripeness is whether HSS and hospitals are presently entitled to time off from litigation to consider various applications for particular deviations that are not now pending.

The ripeness issue regarding failure to apply for hospital privileges at nearby hospitals, before seeking judicial assistance here, would require doctors like plaintiff Yeomans to make applications that they contend are unwanted and unnecessary, and very probably unavailable, as ruled in Hellerstedt. No pertinent authority having been cited for such a delaying requirement, it seems rather ludicrous on its face. The merits of the hospital affiliation issue should be ruled, as was done in the Texas case.

A good deal more plausible, at least superficially, is the contention that some problems regarding the layout and physical features of proposed abortion facilities might be resolved by

going to the Department (HSS) and requesting what the regulation refers to as "deviations."[1] The State Defendants are suggesting that even though they resist discontinuing ASC rules as a package they might be persuaded to reduce or substitute some of the details, perhaps important ones, if only the organizations would formally seek deviations.

But plaintiffs contend that physically-performed abortions are simply misclassified as surgical, as determined in June by the Supreme Court in the Texas case, and that, as in Texas, they should be free of ASC rules as a package. Extensive briefing by the State Defendants shows they remain committed to enforce the ASC package, and any blanket request such as contained in the complaint here would be rejected.[2] It would be futile to hold plaintiffs to making a formal request now for relief from ASC status, as required by statute (§ 198.200 RSMo). Thus, the <u>pleaded</u> controversy is plainly ripe on that issue. Whether I should divert plaintiffs from presenting the current case, where a preliminary injunction hearing is scheduled this month, and require them to seek deviations from lesser obligations is the question the State Defendants are advancing.

By invoking the law of ripeness, the litigants rely on guidance from an opinion by Justice Harlan in 1967. <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136. The basic points to be considered are "fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." Id. at 149. Fitness refers to institutional questions presented when "premature adjudication is in prospect," thus "entangling" the courts in "abstract disagreements over administrative policies." Id. at 148. The court should, when appropriate, "protect the agencies from judicial interference …" Id.

---

[1] The parties will understand that this refers to such things as sprinkler systems and authorizing "wall-mounted surgical light and gooseneck light" rather than "ceiling-mounted surgical light," as provided in the Settlement Agreement of 2010 relating to the Center in Columbia.
[2] Some of this may have occurred before suit was filed. Study of such activities has not been deemed necessary.

Ripeness is a judge-made rule, to be used pragmatically, that is, with a sense of what may work, as well as giving parties, agencies and other governmental officials a fair opportunity to resolve questions that may ultimately relieve the courts of the necessity of ruling.

Here we have important guidance from the Supreme Court in the Texas case. It ruled on the invalidity of the hospital privileges requirement and the bad fit between regulation of surgical safety problems and the activities of an abortion clinic. The Court also rejected defendant's request for judicially engaging in severance – working through the package to determine which portions reasonably apply to abortion clinics. Hellerstedt, supra, 136 S.Ct. at 2319-20. The Court ruled that proceeding in "piecemeal fashion" would verge on judicial legislation. Giving broad guidance to the parties but not detailed review of specific issues is best suited for the courts. This is exactly what plaintiffs seek now, and Hellerstedt assumes that with such guidance abortion providers and patient-safety regulators may then be able to work together for detailed solutions.

Requiring applications for deviations now without guidance beyond what Hellerstedt arguably gives would predictably resolve little or nothing. Each party would stand on divergent theories about Hellerstedt, as presented in the preliminary injunction briefing. Advising the parties promptly whether or not the ASC package of regulations applies in Missouri would give them necessary guidance. If I would hold plaintiffs to compliance with statutory ASC status, their requests to HSS might be minimal, or at least greatly reduced. If I would rule that the Texas case controls, and the statutory classification cannot be used, the State Defendants would be more likely to work with plaintiffs to regulate in a manner that preserves abortion-patient safety in the least demanding manner that would be reasonable.[3]

---

[3] I am quite aware of political issues and questions of conscience which make difficult any prediction that the parties may be able to work things out on their own. Judge Laughrey has referred to "political pressure or public opposition" as well as perceived danger to the budget of HSS in the event of such cooperation. Planned Parenthood of Kansas and Mid-Missouri, Inc. v. Lyskowski, 2015 WL 9463198 *1 (W.D.Mo.). A more recent published

To dismiss now, on a theory of unripeness, would increase rather than reduce the likelihood of undesirable institutional interference and would be counterproductive on the fitness issue. Abbott Laboratories points toward denial of the motion.

The second prong of Abbott Laboratories relates to hardship comparison if the controversy were delayed in the interest of negotiation. My supposition is that a dismissal or stay might delay the case for a year. Plaintiffs would tender applications they realize would be denied if Hellerstedt is deemed inapplicable, as the State Defendants do. After perhaps several months of futile attempts to negotiate, the litigation would be resumed, but with the complication that specific physical issues would be litigated, contrary to the hope expressed by the Supreme Court. The controversy about such details, if deemed to take priority over what plaintiffs seek now, would surely take months. Meanwhile, the principal victims would be women seeking abortions.[4]

The second prong of Abbott Laboratories also favors denying the motion.

For a trial judge, the ripeness issue as presented is somewhat similar to a request for continuing a scheduled hearing or argument for purposes of negotiation. Except for the formality of triggering events by handing defendants a piece of paper, that is what seems to be involved. Even if defendants were begging to negotiate, my sense of what could be accomplished would not favor delay, and harm from delay clearly outweighs the likely benefit. If defendants really want to end this dispute quickly, and feel free to do so on reasonable terms favorable to opening

---

statement from a newly elected State Senator recites "I don't like abortion. I want it out of the state … One avenue is regulation." Jason Hancock article, Kansas City Star, Dec. 1, 2016. To the extent such attitudes affect HSS it may seem improbable that judicial immersion in regulatory details can be avoided. But prospects would be better with general guidance than by forcing plaintiffs now into making formal applications for deviations and into negotiations without mutual understanding of the applicable law.

[4] Under current law we cannot consider as a benefit the lives that might be preserved by delaying a considerable number of early abortions. Judges and counsel cannot properly be influenced by sentiment contrary to law. Perhaps in future years the tables will be turned, or perhaps not.

abortion clinics, the days before the scheduled argument might suffice, assuming plaintiffs also are willing to agree on terms providing reasonable safety for abortion patients. Exercising discretion, a continuance would be denied.

The briefing of the parties fails to focus on issues of ripeness in abortion cases. They are sufficiently numerous so that they might have produced a body of precedent on this subject if it had been litigated. No abortion case known to me would support a ripeness impediment here. All litigation of which I am aware goes forward to announce legal rules, as was done, e.g., in Planned Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969 (8th Cir. 2004). There is not much guidance from other ripeness litigation in which general principles are applied, but the situations fail to resemble what we are dealing with.

The other issue emphasized in the motion to dismiss is the Settlement Agreement of 2010. As plaintiffs point out, the agreement resolved a dispute that went to Judge Smith regarding certain physical requirements for patient safety at the Columbia Center but did not question ASC status. It concerned only one plaintiff, the Kansas City organization. The motion thus could not result in the dismissal of the case brought by two other parties who were not involved. As the D.C. Circuit has observed, "The defense that the settlement agreement bars (plaintiff's) suit is substantive, not jurisdictional." Saksenasingh v. Secretary of Education, 126 F.3d 347 (D.C.Cir. 1997). It is premature to deal with what, if any, effect the agreement may have here.

There are other questions raised, such as possible independent grounds for preventing opening of the Columbia Center for abortion procedures or a possible breach of contract claim against the Kansas City organization (or perhaps a bar to equitable relief sought by that party).

These issues also relate to the merits of the case or possible conditions on equitable relief. We are not there at this time.

The motion to dismiss (Doc. 26) is therefore DENIED.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

March 10, 2017

Kansas City, Missouri