# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JOSHUA D. HAWLEY, in his official capacity as Attorney General of Missouri, et al., <br><br> Defendants. | Case No. 2:16-cv-04313-BCW |

**DECLARATION OF BRANDON HILL, Ph.D., IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Brandon Hill, Ph.D., declares the following:

1. I am the President and Chief Executive Officer of Comprehensive Health of Planned Parenthood Great Plains, Inc. ("Comprehensive Health"). Comprehensive Health operates two abortion facilities in Missouri: the Columbia health center, which is the subject of this motion, and another health center in Kansas City, which we call the Patty Brous health center. I am responsible for the management of Comprehensive Health and therefore am familiar with its operations and finances, including the services we provide and the communities we serve. I submit this declaration in support of Plaintiff Comprehensive Health's Second Motion for Temporary Restraining Order and Preliminary Injunction to allow the Columbia health center to be able to continue providing abortions.

2. Comprehensive Health operated abortion facilities in Missouri long before I joined the organization. In 2017, after this Court entered a preliminary injunction suspending the hospital

admitting privileges and ambulatory surgical center (ASC) requirements, Comprehensive Health obtained a license to provide medication and surgical abortion at our Columbia health center on October 3, 2017, as well as a license to provide medication abortion at our Kansas City health center.

3. However, the Columbia health center has been unable to provide medication abortion since October 24, 2017, when the medically unnecessary complication plan requirement took effect. That requirement—which is very similar to the privileges restriction in this case—requires Comprehensive Health to have a contract with two obstetrician–gynecologists (ob-gyns) who reside near the health center and who also maintain local hospital privileges. We were able eventually to obtain the Department of Health and Senior Services' (DHSS) approval of a complication plan for the Kansas City health center (after several back-and-forth exchanges) because we have at least two abortion-providing ob-gyn physicians who live and work near our Kansas City facility, and accordingly are able to act as backup physicians for the provision of services at the Kansas City health center; however, we have been unable to comply with the complication plan regulation for the Columbia health center. We challenged the regulation on October 30, 2017, but the court denied both our requests for a temporary restraining order and for a preliminary injunction.

4. In our attempts to comply with the complication plan requirement, on November 14, 2017, Comprehensive Health sent a letter to every ob-gyn in Columbia, requesting that they consider entering into a written agreement with us that would satisfy DHSS's interpretation of the regulation. In addition, we reached out in a more targeted manner to individual ob-gyns we believed might be supportive of abortion services or Planned Parenthood, as well as (again) contacting the heads of the two ob-gyn groups in Columbia. One group is affiliated with Boone

Hospital, one of the two hospitals in Columbia—and the hospital with which the Columbia health center has a written transfer agreement. Despite our best efforts, we have been unable to identify a single ob-gyn in the Columbia area who will agree to enter into a written agreement with us and who meets DHSS's many medically unnecessary requirements. This is not surprising, given the history of harassment and ostracization faced by providers who have been associated with us. Decl. of Laura McQuade in Supp. of Pls.' Mot. for Prelim. Inj. ("McQuade Decl.") ¶ 20, ECF No. 15-1. Indeed, this history includes that our current Columbia provider, Dr. McNicholas, who had her admitting privileges at a local hospital revoked in 2015 as a result of pressure put on the hospital by the Missouri Senate Interim Committee on the Sanctity of Life. That revocation caused our Columbia health center to suspend abortion services at that time. McQuade Decl. ¶¶ 22–23.

5. As a result of our inability to comply with the complication plan requirement, the Columbia facility had to stop offering medication abortion, even though we are licensed to provide it.

6. Because our physicians (including Dr. McNicholas, who has been our Columbia provider since 2015) are not able to provide abortion services at our Missouri health centers as frequently as we would like to best serve our patients, we try on an ongoing basis to recruit physicians to provide abortions in Missouri. However, to date, we have been unable to recruit another physician—with or without hospital admitting privileges—for the Columbia health center. Recruitment is extremely difficult because many physicians do not want to be publicly associated with Planned Parenthood or abortion out of fear of personal harm and/or harassment to them or their families or professional repercussions. Indeed, we nearly retained a new physician earlier this year but she ultimately declined to work for us due to security concerns. We continue working to

3

identify potential providers and/or backup physicians, but the challenges posed by Missouri's requirements have proven to be serious impediments to our efforts.

7. We are not currently providing abortions at our Kansas City health center, but hope to be able to resume soon. We were forced to suspend medication abortion (the only type of abortion offered at our Kansas City health center) after March 2018 because of a combination of a physician's reduced schedule and Missouri's medically unnecessary mandatory seventy-two-hour delay/same doctor provision, which requires that the same physician have two in-person appointments with each patient, at least seventy-two hours apart. This requirement is highly problematic from a patient care perspective, as well as being operationally very challenging. During this period of suspended services DHSS indicated it would not relicense the Kansas City health center without a regular provider, and we then advised DHSS that we had arranged for Dr. McNicholas to begin providing medication abortion at the health center. DHSS nevertheless allowed the Kansas City health center's license to expire on August 10, 2018. We are working with DHSS to obtain re-licensure for the Kansas City health center, as well as to seek admitting privileges for Dr. McNicholas from the same hospital that has previously privileged our Kansas City providers, and hope to be able to resume services there without seeking further intervention from this Court.

8. Even if our Kansas City health center is able to resume services, that would not decrease the distances women would need to travel, twice, if the Columbia health center ceases providing abortion services, since the St. Louis and Kansas City health centers are the same distance from the Columbia health center—approximately 125 miles one-way and 250 miles round-trip.

9. Because of the State's unceasing efforts to block access to abortion in Missouri, we were only able to very briefly provide medication abortion at the Columbia health center between the time that this Court's prior preliminary injunction of the admitting privileges restriction allowed it to get re-licensed, and the time that the complication plan requirement forced us to again suspend medication abortion services. After the complication plan requirement took effect in October 2017, we began providing surgical abortion (though the limited number of days Dr. McNicholas is able to travel to the Columbia health center has meant we are not able to offer services in Columbia as frequently as needed).

10. Since DHSS began enforcing the long-dormant requirement that health care providers submit individual complication reports when they treat a complication from an abortion, we have been submitting required reports since we were re-licensed in 2017, and they have reflected the very low rate of complications at our facilities.

11. While Comprehensive Health continues to maintain that all the provisions challenged in this case are medically unnecessary and serve only to restrict women's access to abortion, this motion seeks relief only for the hospital privileges requirement and the Columbia health center. The Columbia health center can provide abortion services without an injunction of the ASC requirement because a 2010 settlement of prior litigation permits it to maintain its licensure as an abortion facility without complying with the full set of ASC requirements; instead, it complies with lesser (though still onerous and medically unnecessary) requirements, such as smaller corridor widths, lower ceiling heights, and smaller procedure and counseling room areas. McQuade Decl. ¶¶ 14, 16.

12. The Columbia health center remains in compliance with the terms of the settlement agreement. The Columbia facility was most recently inspected as to its physical facility (before

5

the entry of the preliminary injunction obviated the need for DHSS inspections to include this issue) in October 2016, and DHSS identified only two small issues. The first is with an exhaust fan in a patient restroom, which has already been resolved. The second issue is that we have requested a waiver from DHSS of the requirement that there be three feet surrounding each of the recovery recliners in the facility's recovery room or, in the alternative, a waiver permitting the Columbia health center to provide surgical abortion with only three recovery recliners rather than four. A copy of the waiver request is attached as Exhibit 1. DHSS has approved a waiver request from the Columbia health center to maintain only three recliners in the past, and indeed, has previously licensed the Columbia health center to provide both surgical and medication abortion with three rather than four recovery recliners. DHSS has not yet responded to our request, but we are hopeful we will resolve the issue with DHSS soon and, thereby, have no outstanding physical facility issues.

13. Finally, the Kansas City health center does not need relief from the ASC requirement as a result of the same settlement agreement. McQuade Decl. at ¶¶ 13–16. As noted above we are working with DHSS to restore our license for that health center.

14. Following the issuance of the Eighth Circuit's mandate on October 1, the next date on which we have abortion services scheduled at the Columbia Health Center is October 3.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 19, 2018

Brandon Hill, Ph.D.

6

# EXHIBIT 1


4402 W 109th St. #100
Overland Park, KS 66211
p: (913) 345-1400
www.ppgreatplains.org

Comprehensive Health of
Planned Parenthood Great Plains

September 12, 2018

**Via U.S. mail and email to: William.Koebel@health.mo.gov**

William Koebel, Administrator
Section for Health Standards and Licensure
Missouri Department of Health and Senior Services
P.O. Box 570
Jefferson City, MO 65102-0570

    Re: *Request for Deviation*

Dear Mr. Koebel:

As you are aware, in 2007, the Missouri Legislature amended the Ambulatory Surgical Center Licensing Law to require any facility performing five or more first trimester abortions or one or more second trimester abortions be licensed as an ambulatory surgical center. Following that change, the Department refused to license Comprehensive Health of Planned Parenthood Great Plains' (CHPPGP) Columbia health center (as well as its Kansas City facility). After CHPPGP sued and obtained a preliminary injunction, the Department entered into a settlement agreement in 2010 by which it would license the Columbia health center to provide both medication and surgical abortion, based on CHPPGP's making certain agreed-upon changes to the health center.

Subsequent to that settlement agreement, the Department for the first time in 2015 advised CHPPGP that it would need to seek a waiver to provide abortions without having four recliners with at least three feet of clear space on both sides and at the foot of each recliner in its recovery room, as required by 19 CSR 30-30.070(3)(N). The Department did not require such waiver previously, even though the health center offered both medication and surgical abortion following the 2010 settlement agreement. CHPPGP duly applied for the waiver, and recognizing no threat to patient health or safety, the Department granted that waiver application and licensed the Columbia health center to provide medication abortion.

However, following an onsite survey conducted on October 11, 2016, the Department determined the Columbia health center was not in compliance with the above regulation because, according to the November 2, 2016 survey results, the previously approved variance did not extend to surgical abortion. The 2016 survey results also found the Columbia center was not in compliance with 19 CSR 30-30.070(3)(X), because the patient lavatory was not equipped with a constant running exhaust (despite that this same exhaust system had been approved repeatedly in the past, most recently in 2015).

Mr. Koebel
September 12, 2018
Page 2

As you also know, the physical facility requirements in 19 CSR 30-30.070 have been preliminarily enjoined since May 2, 2017. Given the Eighth Circuit's recent decision vacating that preliminary injunction, CHPPGP now seeks a waiver from 19 CSR 30-30.070(3)(N) for its Columbia health center, pursuant to 19 CSR 30-30.070(2). The physical standards regulation requires that the "recovery room . . . shall be of sufficient size to accommodate at least four (4) recovery beds or recliners for each procedure room. There shall be three feet (3') of clear space on both sides and at the foot of each recovery bed or recliner." 19 CSR 30-30.070(3)(N).

The Columbia facility cannot fit four recliners with at least three feet of clear space on both sides and at the foot of each recliner; it can only fit three recliners with these clearances. Creating additional space is not feasible, as it would require (a) demolishing and relocating existing walls, both of which border restroom facilities, and (b) taking square footage away from the adjoining procedure room and/or personnel change room, neither of which is permitted by the terms of the 2010 settlement agreement.

The current configuration of four recliners is appropriate to protect patient health and safety, and there would be no health or safety benefit to removing one recliner in order to allow greater clearances. The lack of an incision, general anesthesia, and deep or moderate sedation means that most patients require only minimal duration of recovery following a surgical abortion. Indeed, because the Columbia health center provides only minimal sedation (valium and a topical anesthetic) at present, patients typically require less than 20-30 minutes of recovery. Current clearances allow appropriate patient monitoring during this recovery. Indeed, during the recent inspection of the Columbia facility, on August 13 and 14, 2018, the Department did not express any concerns about the current configuration of our four recliners.

We, therefore, request a waiver of the requirement for three feet of clear space at the sides and foot of each recliner, or in the alternative, the requirement to have four recliners for each procedure room. Because of the short duration of recovery following a surgical abortion, three recliners is sufficient to meet our patients' needs. CHPPGP will resolve the exhaust fan issue by September 21, 2018.

To avoid an interruption of services, **CHPPGP respectfully requests a written response to this request by September 18**. CHPPGP is aware that the Department is unable to waive the hospital-privileges requirements and intends to seek another preliminary injunction against those provisions so that it can continue to provide services uninterrupted after the Eighth Circuit's mandate issues.

Should the Department take the position that it would need to re-inspect the Columbia facility, please advise us promptly. If the Department requires an abortion-providing physician to be present for any such inspection, our physician will be at the health center on September 17 and 21. Following September 21, CHPPGP next has abortion patients scheduled on October 3, but inspection at this time will cause a lapse in services, given that our license expires on October 2. In order to avoid such an interruption, we expect the Department to process this request, as well as our license

reapplication, in good faith and ahead of the license's expiration date, so that there is no interruption of services.

Finally, as I informed Ms. Loethen in response to your call on September 10 advising CHPPGP to cease "immediately" all abortion services because its physician does not have the required hospital privileges, CHPPGP will continue to provide abortion services to its patients, as allowed by the preliminary injunction, until the Eighth Circuit's mandate issues pursuant to the Federal Rules of Appellate Procedures, which would happen at the earliest on October 1.

I look forward to hearing your prompt response to this request.

Sincerely,

Emily Wales
Chief Compliance Officer & General Counsel

CC:
Nikki Loethen, General Counsel, Department of Health and Senior Services
D. John Sauer, First Assistant and Solicitor, Attorney General's Office