IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| COMPREHENSIVE HEALTH OF PLANNED PARENTHOOD GREAT PLAINS, et al., ) ) ) ) Plaintiffs, ) ) v. ) ) RANDALL WILLIAMS, et al., ) ) Defendants. ) | Case No. 2:16-CV-04313-BCW |

**OPINION AND ORDER**

Before the Court is Plaintiffs' third motion for preliminary injunction (Doc. #152). The Court, being duly advised of the premises, denies said motion.

**BACKGROUND**

Comprehensive Health of Planned Parenthood Great Plains ("Comprehensive Health"), Reproductive Health Services of Planned Parenthood of St. Louis Region ("RHS"), and Dr. Ronald Yeomans (collectively "Plaintiffs") provide or seek to provide abortion services in Missouri. Comprehensive Health operates facilities in Kansas City and Columbia, and RHS operates a facility in St. Louis. On November 30, 2016, Plaintiffs filed claims against Defendants Joshua Hawley, in his official capacity as the Missouri Attorney General,[1] and Dr. Randall Williams, in his official capacity as Director of the Missouri Department of Health and Senior Services ("DHSS"), and others (collectively "Defendants"), alleging certain Missouri statutes violate the substantive due process and equal protection clauses of the United States Constitution.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Missouri Attorney General Eric Schmitt is substituted for Joshua Hawley.

1

Mo. Rev. Stat. §197.215(2), hereinafter referred to as the "Hospital Relationship Requirement" states as follows:

> 197.215.1. Upon receipt of an application for a license, the department of health and senior services shall issue a license if the applicant and ambulatory surgical center facilities meet the requirements established under sections 197.200 to 197.240,[2] and have provided affirmative evidence that:
> [. . . .]
>> (2) Surgical procedures shall be performed only by physicians, dentists or podiatrists, who at the time are privileged to perform surgical procedures in at least one licensed hospital in the community in which the ambulatory surgical center is located, thus providing assurance to the public that patients treated in the center shall receive continuity of care should the services of a hospital be required; alternatively, applicant shall submit a copy of a current working agreement with at least one licensed hospital in the community in which the ambulatory surgical center is located, guaranteeing the transfer and admittance of patients for emergency treatment whenever necessary
>
> [. . . .]

Mo. Rev. Stat. § 197.215(2). The implementing regulations for this statute reflect that "in the community" means no more than 15 minutes away. Mo. Code Regs. Ann. tit. 19, § 30-30.060(1)(C)(4).

The other statutes otherwise applicable to facilities providing abortion services in Missouri are set forth in Mo. Rev. Stat. §§ 188.027 and 188.080, hereinafter referred to together as the "Privileges Requirement." The Privileges Requirement states as follows:

> 188.027.1 Except in the case of medical emergency, no abortion shall be performed or induced on a woman without her voluntary and informed consent, given freely and without coercion. Consent to an abortion is voluntary and informed and given freely and without coercion, if and only if, at least twenty-four hours prior to the abortion:
>> (1) The physician who is to perform or induce the abortion or a qualified professional has informed the woman, orally, reduced to writing, and in person, of the following:
>>> [ . . . . ]
>>> (e) The location of the hospital that offers obstetrical or gynecological care located within thirty miles of the location where the abortion is

---
[2] Mo. Rev. Stat. §§ 197.200 to 197.240 generally set forth state licensing requirements for ambulatory surgical centers and abortion facilities.

2

performed or induced and at which the physician performing or inducing the abortion has clinical privileges and where the woman may receive follow-up care by the physician if complications arise . . . .

188.080 Any person who is not a physician who performs or induces or attempts to perform or induce an abortion on another is guilty of a class B felony, and upon conviction, shall be punished as provided by law. Any physician performing or inducing an abortion who does not have clinical privileges at a hospital which offers obstetrical or gynecological care located within thirty miles of the location at which the abortion is performed or induced shall be guilty of a class A misdemeanor, and upon conviction shall be punished as provided by law.

Mo. Rev. Stat. §§ 188.027, 188.080.

In sum, the Hospital Relationship Requirement requires a physician performing a surgical procedure in an ambulatory surgical center to maintain privileges with a hospital that allows the physician to conduct surgical procedures at that hospital. The hospital at which privileges are held may be no more than fifteen minutes away from where the surgical procedure would be performed. The Privileges Requirement requires a physician performing or attempting to perform an abortion at a facility to maintain clinical privileges with a hospital that offers obstetrical or gynecological services within thirty miles of the facility offering abortion services, or face criminal liability.

In the instant motion for preliminary injunction, Plaintiffs seek to enjoin enforcement of the Privileges Requirement relative to its facility in Columbia, Missouri, which only provides surgical abortions[3] ("Columbia Facility"), on the basis that it violates substantive due process.

## PROCEDURAL HISTORY

The instant motion for preliminary injunction is Plaintiffs' third. Plaintiffs' first motion for preliminary injunction sought to enjoin enforcement of the ambulatory surgical center requirement

---

[3] "The term 'surgical abortion' is a slight misnomer in that the procedure is performed via vacuum aspiration and does not involve general anesthesia or require making an incision." Comprehensive Health of Planned Parenthood Great Plains v. Williams, 322 F. Supp. 3d 921, 924 (W.D. Mo. June 11, 2018).

3

(not at issue here), and the Hospital Relationship Requirement. The district court granted Plaintiffs' motion for preliminary injunction.

On September 10, 2018, the Court of Appeals for the Eighth Circuit vacated the preliminary injunction in its entirety and remanded the matter to the district court. Comprehensive Health of Planned Parenthood Great Plains v. Hawley, 903 F.3d 750, 759 (8th Cir. 2018). The Eighth Circuit stated that the "undue burden" standard as set forth in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 877 (1992) and reiterated in Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292, 2310 (2016), "requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." Hawley, 903 F.3d at 755 (citing Hellerstedt, 136 S. Ct. at 2310). The Eighth Circuit found that, in light of Hellerstedt, the district court erred in explicitly refusing the weigh the asserted benefits of the challenged laws because, as compared to the facts underlying Hellerstedt, "[p]erhaps there was a unique problem Missouri was responding to under its inherent police power . . . and the Hospital Relationship Requirement may be appropriate given Missouri's legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient. Id. at 758.

The Eighth Circuit noted "an independent constitutional duty [on the courts] to review factual findings where constitutional rights are at stake," and directed the district court to, on remand, "do that which Hellerstedt instructed: 'consider[] the evidence in the record – including expert evidence, presented in stipulations, depositions, and testimony and then weigh[] the asserted benefits against the burdens." Hawley, 903 F.3d at 758.

The Eighth Circuit issued its mandate on October 1, 2018, and the Court heard oral argument on Plaintiffs' second motion for preliminary injunction on the same day. On October 3,

2018, the district court denied Plaintiffs' second motion for preliminary injunction for lack of standing on the basis that the Columbia Facility did not, excluding its non-compliance with the Privileges Requirement, meet the requirements for state licensure renewal.

On December 14, 2018, DHSS certified the Columbia Facility's compliance with all applicable regulations for state licensure, except the Privileges Requirement, thus conferring standing on Plaintiffs to challenge the Privileges Requirement relative to the Columbia Facility. Plaintiffs filed the instant motion for preliminary injunction on December 22, 2018.

## LEGAL STANDARD

To avoid an abuse of discretion in considering whether to issue a preliminary injunction, the district court should avoid the following: (a) "fail[ing] to consider a relevant factor that should have been given significant weight;" (b) considering and giving "significant weight to an irrelevant or improper factor"; and (c) "consider[ing] only proper factors – and no improper ones – but in weighing those factors, commit[ing] a clear error or judgment." Planned Parenthood of Ark. & E. Okla. v. Jegley, 864 F.3d 953, 957 (8th Cir. 2017) (citing Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013)).

The following factors are proper to consider in the context of a motion preliminary injunctive relief: "(1) the threat of irreparable harm to the moving party, (2) the balance between this harm and the injury that granting the injunction will inflict on the non-moving party, (3) the probability that the moving party will succeed on the merits, and (4) the public interest." Jegley, 864 F.3d at 957 (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). "While no single factor is determinative . . . the Eighth Circuit has consistently held that likelihood of success on the merits is the most important factor." Comprehensive Health of Planned Parenthood Great Plains v. Williams, 322 F. Supp. 3d 921, 928 (W.D. Mo. June 11, 2018) (citing

5

Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013); S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012)).

Further, "[w]here a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute . . . the moving party must make a more rigorous showing that it is likely to prevail on the merits." Jegley, 864 F.3d at 957-58 (citing Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008)).

## DISCUSSION

As a threshold matter, the parties dispute the scope of the preliminary injunction sought by Plaintiffs. The Court must determine whether Plaintiffs may seek injunctive relief through an as-applied challenge, though the complaint frames Plaintiffs substantive due process claim as a facial challenge.

### A. THE LARGE FRACTION TEST APPLIES.

Plaintiffs allege that the Privileges Requirement violates substantive due process under the Fourteenth Amendment because it is "an unnecessary health regulation that imposes an undue burden on women's right to choose abortion." (Doc. #1 at 17). Plaintiffs urge the Court to construe this claim as an as-applied challenge relating to the Columbia Facility. In support of this position, Plaintiffs assert that although the claim is framed as facial challenge in the complaint, they also seek relief as deemed just and proper, such that the Court may properly construe, for purposes of Plaintiffs' preliminary injunction, Plaintiffs' substantive due process challenge as-applied to the Columbia Facility. Defendants counter that the Court is bound to construe Plaintiffs' claim as a facial challenge to the Privileges Requirement based on the claim as pleaded. Defendants further assert as applied challenges are reserved only for challenges to abortion regulations brought by individual women.

At the outset, the Court notes that the Eighth Circuit categorized, in the context of Plaintiffs' first motion for preliminary injunction, the substantive due process claim as a facial challenge. Hawley, 903 F.3d at 755. Since that categorization, however, though the same allegations are controlling, Plaintiffs have since limited the injunctive relief they are seeking to the application of the Privileges Requirement at the Columbia Facility. The Court is thus inclined to find, for purposes of Plaintiffs' third motion for preliminary injunction, that Plaintiffs' substantive due process claim challenging the Privileges Requirement may be properly construed as an as-applied challenge at this stage. This conclusion is based on the general premises that "facial challenges are generally disfavored," and that the Court has authority to craft injunctive relief. Jegley, 864 F.3d at 958; Gonzales v. Carhart, 550 U.S. 124, 168 (2007). Additionally, persuasive authority suggests a facial challenge may be properly converted into an as applied challenge. W. Ala. Women's Ctr. v. Williamson, 900 F.3d 1310, 1325 (11th Cir. 2018) (holding the district court did not err in converting a facial challenge into an as applied challenge). Finally, this conclusion makes logical sense because it would seem that the facts underlying an as-applied challenge are anticipated by and included within a facial challenge directed toward the same statute.

Notwithstanding this conclusion, however, it is the Court's view that the parties' dispute about the type of challenge to the Privileges Requirement is driven mainly by the parties' disagreement relating to the application of the "large fraction test." The "large fraction test," is a "different standard" specifically used in "challenges to abortion regulations . . . ." Jegley, 864 F.3d at 958. Under the large fraction test, a "plaintiff can prevail by demonstrating that 'in a large fraction of the cases in which the law is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." Id. (citing Casey, 505 U.S. at 895). The parties do not dispute the application of the large fraction test in the context of a facial challenge, which explains

Defendants' position discussed above regarding the proper construction of Plaintiffs' substantive due process claim challenging the Privileges Requirement. Regardless, though the Court finds Plaintiffs' claim properly construed as an as-applied challenge for purposes of the third motion for preliminary injunction, the Court concludes the large fraction test governs analysis for whether Plaintiffs have demonstrated a likelihood of success on the merits of their claim that the Privileges Requirement violates substantive due process as applied to the Columbia Facility. See Comprehensive Health of Planned Parenthood Great Plains v. Williams, 322 F. Supp. 3d 921, 928 (W.D. Mo. June 11, 2018).

### B. PLAINTIFF'S THIRD MOTION FOR PRELIMINARY INJUNCTION IS DENIED.

To show a likelihood of success on the merits of their substantive due process claim, Plaintiffs must demonstrate that the Privileges Requirement imposes an "undue burden on abortion access." Hellerstedt, 136 S. Ct. at 2300. "A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." Casey, 505 U.S. at 877. In assessing whether such circumstances are present with respect to the challenged law, courts are required to "consider the burdens a law imposes on abortion access together with the benefits those laws confer." Hellerstedt, 136 S. Ct. at 2309.

An abortion regulation is considered to be a substantial obstacle in the path of a woman seeking an abortion (and thus an undue burden) only if the law being challenged can be said to "operate as a substantial obstacle to a woman's choice to undergo an abortion" "in a large fraction of the cases in which the regulation is relevant . . . ." Casey, 505 U.S. at 895; Jegley, 864 F.3d at 958; Williams, 322 F. Supp. 3d 928.

8

Case 2:16-cv-04313-BCW   Document 186   Filed 02/22/19   Page 8 of 12

Thus, Plaintiffs can demonstrate a likelihood of success on the merits by demonstrating that in a large fraction of the cases in which it is relevant, the Privileges Requirement "will operate as a substantial obstacle to a woman's choice to undergo an abortion." Jegley, 864 F.3d at 958 (citing Casey, 505 U.S. at 895).

The dispositive issue, then, is the number of cases in which the Privileges Requirement is relevant. The regulation is relevant to a narrower category than "all women, pregnant women," or even all women seeking abortion within a state. Hellerstedt, 136 S. Ct. at 2320 (citing Casey, 505 U.S. at 894-95). Further, where, as in this case, only a certain type of abortion is at issue, the relevant number is further narrowed to include only to those cases where the same certain type of abortion is sought. Jegley, 864 F.3d at 958 ("Thus, because the contract-physician requirement only applies to medication-abortion providers, the relevant denominator here is women seeking medication abortions in Arkansas").

Plaintiffs argue the applicable denominator, representing the number of women to whom the Privileges Requirement is relevant, is women seeking surgical abortions for whom the Columbia Facility is the most geographically convenient. To the contrary, Defendants argue the applicable denominator, representing the number of women to whom the Privileges Requirement is relevant, is all women seeking surgical abortion in the state of Missouri.

On the current record, the Court need not resolve the geographical limits of the cases to whom the Privileges Requirement is relevant because Plaintiffs have not established a likelihood of success on the merits, even if the Court considers the large fraction test pursuant to the denominator Plaintiffs suggest. Stated differently, Plaintiffs have not met their burden to demonstrate a likelihood of success on the merits even if the relevant large fraction is as large as Plaintiffs would argue. This conclusion results even as the Court considers the large fraction test

9

more conceptually than mathematically. Jegley, 864 F.3d at 960 (citing Cincinnati Women's Servs., Inc. v. Taft, 468 F.3d 361, 374 (6th Cir. 2006)).

In the context of undue burden analysis, the court is required to "consider the burdens a law imposes on abortion access together with the benefits those laws confer." Hellerstedt, 136 S. Ct. at 2309. In striking down a Texas law similar to the Privileges Requirement here, the Supreme Court found in Hellerstedt that the following burdens are proper considerations in analyzing whether a statute imposes an undue burden: (1) whether the abortion provider has attempted to or has identified local physicians with hospital privileges willing to provide abortions in the particular community; (2) whether a significant number of clinics face closure, leading to fewer doctors, longer wait times, and increased crowding; and (3) whether a significant number of women faced increased travel distances. 136 S. Ct. at 2313.

With respect to the first burden identified, whether there are other physicians available with hospital privileges willing to provide abortion services in the community is the first "domino," in considering the cumulative effect of burdens imposed. June Med. Servs. L.L.C. v. Gee, 905 F.3d 787, 807 (5th Cir. 2018). With respect to the second burden identified, increased wait times refers to both wait time in securing an appointment and wait time in a facility waiting room. Hellerstedt, 136 S. Ct. at 2318. With respect to this third burden identified, "increased driving distances do not always constitute an undue burden," but increased driving distances are considered "but one additional burden, which, when taken together with others that the closings brought above, and when viewed in light of the virtual absence of any health benefit," may contribute to a finding of an undue burden. Id. at 2313.

Additionally, Jegley instructs that in considering the relevant burdens, the district court should make specific findings as to "the number of women [who] would forgo abortions" and "the number of women who would postpone their abortions." 864 F.3d at 959.

In this case, the current record does not provide a sufficient basis for the Court to conclude that Plaintiffs are likely to succeed on their claim that the burdens associated with the Privileges Requirement as applied to the Columbia Facility, outweigh the benefits conferred by the Privileges Requirement as applied to the Columbia Facility.

On remand, the Eighth Circuit directed the Court to make Missouri-specific findings about the benefits and burdens associated with the Privileges Requirement. The previously granted preliminary injunction was vacated at least on part on the basis that the district court declined to make specific factual findings. Plaintiffs assert a likelihood of success on the merits based predominantly on the declarations of their expert Dr. Lindo. The Court is not convinced that Dr. Lindo's opinions, which are extrapolated from data in Texas counties relevant in the Hellerstedt case, provide a basis for the Missouri-specific fact-finding directed by the Eighth Circuit.

Even if the Court relies on Dr. Lindo's opinions to conclude the Privileges Requirement results in increased driving distances for 30 women or 22% of women who would otherwise seek abortion services at the Columbia Facility, increased driving distances are "but one" consideration in the undue burden analysis. This conclusion results even considering burdens incidental to increased driving distance, such as increased costs, and employment impacts, such as the potential erosion of medical confidentiality.

The record does not include evidence of the other relevant burdens associated with the Privileges Requirement. In particular, Plaintiffs do not present evidence of attempts to find physicians with hospital privileges willing to provide abortion services at the Columbia Facility,

or evidence of fewer doctors, longer wait times, and increased crowding at RHS in St. Louis. Finally, the record does not provide a basis in evidence to approximate the number of women who will forego or postpone surgical abortion incidental to the inoperability of the Columbia Facility.

In sum, evidence of increased driving distance relative to the Privileges Requirement standing alone, for purposes of the motion for preliminary injunction, is not sufficient, even when weighed against the assertions of benefits conferred by the Privileges Requirement, to demonstrate a likelihood of success on the merits. In the Court's view, the law directs this conclusion even considering the Defendants' dubious assertions of benefits conferred by the Privileges Requirement.

For all of these reasons, the Court concludes Plaintiffs have not demonstrated a likelihood of success on the merits with respect to their claim that the Privileges Requirement violates substantive due process as applied to the Columbia Facility.

The remaining Dataphase factors do not, based on the current record, outweigh Plaintiffs' inability to establish a likelihood of success on the merits. Accordingly, it is hereby

ORDERED Plaintiffs' motion for preliminary injunction (Doc. #152) is DENIED. It is further

ORDERED the parties shall meet and confer regarding a proposed litigation schedule to be filed on or before **March 8, 2019**.

IT IS SO ORDERED.

Dated: February 22, 2019 /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT

12

Case 2:16-cv-04313-BCW   Document 186   Filed 02/22/19   Page 12 of 12